Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of GUSSIE MICHELOV, Respondent, for Compensation on Behalf of Herself and Daughter under the Workmen's Compensation Law for the Death of Her Husband, MORRIS MICHELOV, *v.* CENTURY METAL SPINNING AND STAMPING COMPANY, Employer, and the UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, Appellants.

Third Department, November 18, 1920.

**Workmen's Compensation Law — evidence not showing that injuries received arose out of and in course of employment.**

Where it appeared that the deceased remained at the plant of his employer after closing time for the purpose of counting up his work, and that about a half hour thereafter he was found on the ground outside of the building with his hat and coat off and so severely injured that he died the next day, and that the windows of the plant which he had no occasion to use were found to be fastened on the inside, it could not be presumed that he met with an accident and then assumed that the accident arose out of and in the course of his employment.

The evidence establishes that the injuries could not have been due to any risk growing out of the employment, and the award should be reversed.

APPEAL by the defendants, Century Metal Spinning and Stamping Company and another, from a decision and award of the State Industrial Commission made on the 29th day of January, 1920.

*William Warren Dimmick,* for the appellants.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

WOODWARD, J.:

There is no dispute that Morris Michelov was employed by the Century Metal Spinning and Stamping Company on the 26th day of November, 1919, and that he died on the day following. The plant of his employer was located on the second floor above the basement of the premises at 49 Eliza-

beth street, New York city.  The day's work was completed at six o'clock in the evening.  At six-fifteen the decedent had some conversation with a fellow-laborer, and gave as a reason for not going home at once that he wanted to count up the pieces he had produced upon which his compensation depended. At about six-thirty-five of the same evening the decedent was found in the back yard of the premises some little distance from the building with his hat and coat off, and suffering from broken ribs and internal injuries from which he died the following day.  He was unable to tell how he came in the position in which he was found; there was no way of getting to the point through any regular passageway without traveling more than two hundred feet, and the point where decedent was found was not in the use of the employer, nor did any part of his employment call for his presence at this point.  The evidence is to the effect that the windows were down and fastened on the inside when an investigation was made, and that entrance to the fire escape could have been made only through the windows; and it seems highly improbable that the decedent could have accidentally fallen from the windows of this factory building under the circumstances shown to exist immediately after the discovery of the decedent.  There were other workmen employed on the floor below, and a nephew of the decedent called the district attorney's attention to the case and suggested homicide; that a foreman of the employer was hostile to the decedent, and that he (the nephew) believed the decedent was thrown from the window by this hostile foreman — a theory more in harmony with the known facts than that of an accidental fall, with the windows fastened on the inside.  At any rate, the evidence shows that the decedent had completed his day's work and remained in the plant after the other workmen had left for his own purposes, not in the discharge of any duty to the employer.

The learned counsel for the State Industrial Commission says in his brief that Samuel Singer, who was the stationary engineer in the basement, " and who with the proprietor found the body of the deceased, says that he heard a noise about a quarter of an hour past 6, and when asked what sort of a noise it was he says, ' Well, not like a man; I expected maybe they threw down a dog there; they throwed them down sometimes

through the window — the Italians there." This gives color to the suggestion of homicide, and does not tend to show that the death was due to accidental causes. Again counsel says: " It is difficult to say what the exact facts are with reference to the accident which happened to this man. The Industrial Commission has found that the natural inference from the evidence is ' that the said Morris Michelov in some manner, not explained, fell from the window or the fire-escape of his place of employment to the ground below and that such injuries were sustained by reason of such fall.' This seemed to be about the only hypothesis that can be made and to sustain the award we have to fall back on section 21, and assume the accident occurred in the course of the employment."

Here there was undisputed evidence that the decedent remained in the factory for his own purposes; that he was found outside the building, upon premises not within the control of the master and where he could not be in the performance of any duty owing to the employer, and with the window leading to the fire escape, which the decedent had no occasion to use, fastened on the inside; and to presume that he met with an accident, and then to assume that this presumed accident arose out of and in the course of his employment, is reaching out after the unattainable in law, for it cannot be justified. The evidence establishes that the injuries could not have been due to any risk growing out of the employment, and the award should be reversed.

All concur.

Award reversed and claim dismissed.